**UNITED STATES BANKRUPTCY COURT**          **NOT FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**

…………………………………………..x
In re                                            x          Chapter 11
                                                 x
CPW Acquisition Corp. and                        x          Case No. 08-14623 (AJG)
Robert Lane Estates, Inc.,                       x
                                                 x          (Jointly Administered)
                              Debtors.           x
                                                 x
…………………………………………..x

## OPINION GRANTING CPW ACQUISITION CORP.'S OBJECTION TO CLAIM NO. 9

Before this Court is CPW Acquisition Corp.'s (the "Debtor") first omnibus

objection, dated August 27, 2009 (the "Objection"), to certain proofs of claim filed

against its estate, including a proof of claim relating to Claim No. 9 (the "Claim") filed

by Imperial Capital, LLC ("Imperial Capital"). Imperial Capital filed an opposition to

the Objection on September 10, 2009, to which the Debtor responded on October 14,

2009. On October 28, 2009, Imperial Capital filed a reply in further support of its

opposition to the Objection. In response, the Debtor filed a sur-reply on November 10,

2009. Imperial Capital in turn filed a supplemental reply on November 13, 2009. A

hearing was held in this matter on September 15, 2009.

### Background

The purported basis for the Claim lies in an engagement letter (the "Engagement

Letter") entered into on September 19, 2007 between Imperial Capital and Jonquille

Associated S.A. ("Jonquille"), an affiliate of the Debtor. Pursuant to the terms of the

Engagement Letter, Imperial Capital agreed to act, for a three-month period beginning on

the date of the Engagement Letter, as the exclusive financial advisor to Jonquille and its

affiliates in connection with a "Financing", defined therein as "the private placement of up to $35 million, or such other amount as may be agreed in writing between the parties, of debt securities" in compliance with Section 4(2) of the Securities Act of 1933 (the "Securities Act").  Upon the completion of a "Financing", Imperial Capital would be entitled to a cash fee from Jonquille or an affiliate thereof in consideration for the financial advisory services rendered by Imperial Capital.  Under Section 2 of the Engagement Letter, the amount of cash fee to be paid to Imperial Capital would be calculated as a percentage of "the face amount of any debt securities sold or arranged as part of the Financing" and would vary based on whether Imperial Capital introduced the purchaser of the debt securities.

On December 10, 2007, the Debtor, Jonquille, Robert Lane Estates Inc. and FCCD Limited, as agent (in such capacity, the "Agent") to Fortress Credit Corp. and certain unspecified lenders (collectively, the "Lenders"), entered into an agreement (the "Fortress Agreement") in order to address a payment default by Jonquille as borrower under a prior existing loan facility, dated October 25, 2005 (the "Loan Facility"), between Jonquille and the Agent.  Under Clause 2.2 of the Fortress Agreement, the Agent expresses a current intention not to make demand for the principal, accrued interest and other amounts due and payable under the Loan Facility until three months after its stated maturity date, in exchange for a fee and subject to certain terms and conditions set forth in other parts of the Fortress Agreement.

Imperial Capital argues that the transaction evidenced by the Fortress Agreement – which it characterizes as a refinancing entered into by the Debtor and its affiliates with Fortress Credit Corp. – constituted a "Financing" under the terms of the Engagement

2

Letter.  In addition, Imperial Capital contends that even if the Fortress Agreement were deemed to be a forbearance agreement, as opposed to a contract with respect to a separate financing arrangement, the Fortress Agreement still constituted a "Financing" because a forbearance agreement involves an extension of credit in a technical sense.  It is therefore Imperial Capital's position that the Debtor owes Imperial Capital a financial advisory fee pursuant to Section 2 of the Engagement Letter as a result of the signing of the Fortress Agreement.

In contrast, the Debtor asserts that the transaction evidenced by the Fortress Agreement did not constitute a "Financing" because the Fortress Agreement did not result in the sale or arrangement of any debt securities.  The Debtor also argues that the Fortress Agreement was a mere forbearance agreement, as opposed to a "Financing," because the terms of the agreement did not involve the raising of any capital or the injection of any new funds into the Loan Facility.  Given that the Debtor contends that no "Financing" ever took place, it takes the position that the Debtor owes no fee to Imperial Capital under the terms of the Engagement Letter and that the Objection should accordingly be granted to the extent it relates to the Claim.

### Discussion

In a dispute over the interpretation of a contract governed by New York law, the "key inquiry at the initial interpretation stage" is whether the contract, considered in its entirety, is "unambiguous with respect to the question disputed by the parties," *Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.*, 458 F.Supp.2d 178, 185 (S.D.N.Y. 2006).  The threshold question disputed by the parties in this case is whether the transaction evidenced by the Fortress Agreement constituted a "Financing" as defined in

3

the Engagement Letter, the interpretation of which is governed by New York law.[1]  If the

Engagement Letter, considered as a whole, is unambiguous as to the type of transaction

that constitutes a "Financing," then this Court is required to give effect to the

Engagement Letter as written.  *See Aon Fin. Prods., Inc. v. Société Générale*, 476 F.3d

90, 96 (2d Cir. 2007) (stating that a court is required to give effect to a contract as written

if the language of the contract is unambiguous); *Consol. Edison Co. of New York, Inc. v.*

*The Port Auth. of New York and New Jersey (In re September 11 Litig.)*, 640 F.Supp.2d

323, 333 (S.D.N.Y. 2009) ("Under New York law, the presence or absence of ambiguity

is determined by looking within the four corners of the document, without reference to

extrinsic evidence.") (internal citation and quotation marks omitted).

        Defined in the Engagement Letter as a private placement of debt securities to be

effected in compliance with Section 4(2) of the Securities Act, a "Financing"

axiomatically involves the offering of securities in the capital markets.  In contrast, a loan

transaction is not generally understood in the financial industry to involve any issuance of

securities, much less an agreement to forbear from exercising certain rights as an agent to

the lenders in a loan transaction.  *Cf. Reves v. Ernst & Young*, 494 U.S. 56, 65-66, 110

S.Ct. 945, 951-52 (1990) (stating that a note evidencing a loan "by commercial banks for

current operations" or "a character loan to a bank customer" does not constitute a security

and suggesting that "an instrument in which there is common trading for speculation or

investment" would tend to constitute a security) (internal citations and quotation marks

omitted).  Given the foregoing, a reasonably intelligent person who is familiar with the

---

[1] Section 10 of the Engagement Letter states that the letter is to be "construed, interpreted, governed and
applied in all respects in accordance with the internal laws of the State of New York, without giving effect
to principles of conflict of laws."

terminology used in the financial industry would find the meaning of "Financing" to

exclude unambiguously the Loan Facility and, by extension, a written intention to forbear

from making a demand for amounts due under the Loan Facility, as documented in the

Fortress Agreement.  *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir.

1997) (stating that an ambiguity exists in a contract if the relevant terms are "capable of

more than one meaning when viewed objectively by a reasonably intelligent person who .

. . is cognizant of the customs, practices, usages and terminology as generally understood

in the particular trade or business") (internal citation omitted).

Given that the term "Financing" has a "definite and precise meaning" and is "not

reasonably susceptible" to being interpreted to include a loan transaction or a written

intention to delay making demand under a loan transaction, no ambiguity exists as to

whether the transaction evidenced by the Fortress Agreement constituted a "Financing."

*Creative Waste Mgmt.*, 458 F.Supp.2d at 185 (stating that a term is deemed unambiguous

if it has "a definite and precise meaning" and is "not reasonably susceptible to differing

interpretations").  Giving effect to the Engagement Letter, particularly the definition of

"Financing," as written, this Court finds that the transaction in question did not constitute

a "Financing".[2]  As such, no "Financing" took place with respect to Jonquille, the Debtor

or any of Jonquille's other affiliates within the context of the Fortress Agreement.

Imperial Capital is therefore not entitled to the payment of any financial advisory fees by

the Debtor by virtue of Jonquille's entry into the Fortress Agreement.

---

[2] It is unnecessary to reach the issues of whether the Fortress Agreement constituted a forbearance
agreement, or whether a forbearance agreement involves a financing in the generic sense based on the
technical extension of credit generally embodied in such an agreement.  Neither of these two related issues
have any import in this case because the unambiguous definition of "Financing" in the Engagement Letter
does not hinge upon the occurrence of any type of financing.  Rather, as discussed above, the presence of a
securities offering is a necessary element of the definition.

**Conclusion**

For the foregoing reasons, the Court grants the Debtor's First Omnibus Objection

to Claims to the extent it relates to Claim No. 9 filed by Imperial Capital.

The Debtor is to settle an order consistent with this opinion.


Dated: New York, New York
November 16, 2009


**s/Arthur J. Gonzalez**
UNITED STATES BANKRUPTCY JUDGE