**UNITED STATES BANKRUPTCY COURT**  **NOT FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------
                                                   :
In re                                               :                     Chapter 11
                                                   :
CPW ACQUISITION CORP. and           :           Case No. 08-14623 (AJG)
ROBERT LANE ESTATES, INC.              :
                                                  :            (Jointly Administered)
                               Debtors.       :
-----------------------------------------------------------------

**OPINION AND ORDER**

       Before this Court is a motion (the "Motion") by CPW Acquisition Corp. ("CPW") and Robert Lane Estates, Inc. ("Robert Lane," together with CPW, the "Debtors"), dated May 29, 2009, which seeks an order (i) finding Claire C. Ambrosio ("Ambrosio") in contempt of court for her willful failure and refusal to (A) surrender the Debtors' books and records to the Debtors' president, Mr. Davide Franco, and (B) turn over the keys to Robert Lane's property to Mr. Franco and otherwise afford Mr. Franco access thereto; (ii) directing Ambrosio to surrender the Debtors' books and records to Mr. Franco and turn over the keys to Robert Lane's property to Mr. Franco and otherwise afford Mr. Franco or his representatives access thereto; and (iii) awarding the Debtors money damages and reasonable costs and attorney's fees.

*Background and Procedural History*

       On November 20, 2008, the Debtors filed voluntary chapter 11 petitions (the "Chapter 11 Cases"). The cases are being jointly administered pursuant to order entered by this Court. CPW owns and manages a condominium unit at the Trump International Hotel and Tower Condominium located at One Central Park West, New York, New York ("CPW Property"). Robert Lane owns and manages a single family residence located at

418 Robert Lane, Beverly Hills, CA ("Robert Lane Property").  Pursuant to a Facility Agreement ("Facility Agreement") dated October 2005 between Jonquille Associated S.A. ("Jonquille"), one of the Debtors' affiliates, and Fortress Credit Corp. ("Fortress'), Fortress and its participating lenders provided a term loan facility to Jonquille in the amount of $28 million, with a termination date of October 31, 2007.  By agreement dated December 27, 2006, the parties to the Facility Agreement entered into an Amendment and Restatement Agreement (the "Amended Agreement" and collectively with the Facility Agreement, the "Loan Agreements").  Jonquille's performance of its obligations pursuant to the Loan Agreements is secured by the CPW Property to the extent of $14 million and the Robert Lane Property.[1]

Jonquille failed to make payments of amounts outstanding on the termination date of the Loan Agreements; thus, on or about April 9, 2008, the agent of the Loan Agreements, a Fortress affiliate, declared all amounts due and payable.  Thereafter, on July 9, 2008, the Central London County Court issued a possession order and Fortress entered into full possession of the London Property, gave notice of a trustee's sale of the Robert Lane Property, and commenced an action in the Supreme Court of the State of New York seeking to foreclose on its mortgage lien on the CPW Property.  When the Debtors filed their Chapter 11 Cases, both the sale of the Robert Lane Property and the cause of action against CPW in the Supreme Court of the State of New York were stayed.

On December 4, 2008, Fortress filed a motion before this Court to convert CPW's chapter 11 case to chapter 7 and for relief from the automatic stay in Robert Lane's case

---

[1] Jonquille also pledged its property, Apartment 102 in Fountain House, located at Park Street, London W1, England (the "London Property") as well as its intercompany claims against Robert Lane and against CPW as additional collateral for the loan under the Loan Agreements.

2

to proceed with its foreclosure proceedings. A stipulation (the "Stipulation") was entered into between the Debtors and Fortress and "So Ordered" by the Court on January 27, 2009 which provides, among other things, that if Fortress is not fully paid by June 10, 2009, the Debtors must proceed to obtain a bona fide noncontingent refinancing commitment or a bona fide offer for the Robert Lane Property.

On February 12, 2009, the Debtors underwent a change of control whereby Mr. Franco and Mr. Sergio Torri were appointed, by an Italian Prosecuting Judge, as receiver of all of the shares owned by Vittorio Cecchi Gori ("Gori") in Nous S.r.l., an Italian limited liability corporation ("Nous"), the Debtors' parent company. Gori was replaced as the Debtors' sole director and Ambrosio was also relieved from her role as the Debtors' officer and secretary. Despite the change of control, the Debtors alleged that Ambrosio has retained possession, custody, and control of the Debtors' books and records and the keys to the Robert Lane Property or otherwise failed to afford the Debtors' access to the Robert Lane Property. Consequently, the Debtors filed this Motion. A hearing was held on June 4, 2009 with respect to the Motion where Ambrosio testified that she has surrendered the requested books and records and would facilitate the Debtors' access to the Robert Lane Property. At the conclusion of the hearing, the Court directed Ambrosio to turn over the keys to the Robert Lane Property (the "Order").

It is alleged, however, that Ambrosio failed to comply with the Order as the Debtors remained unable to access the Robert Lane Property. On June 23, 2009, the Court issued an order finding Ambrosio in contempt of court ("Contempt Order") for her failure to turn over the keys to the Robert Lane Property. The Court held another hearing on June 25, 2009, during which Ambrosio testified that she was unable to comply with

3

the Order because she never had physical possession of the keys. Ambrosio further testified that she had customarily gained access to the Robert Lane Property through a caretaker who refused to grant her access to the premise pursuant to the instructions of her (the caretaker's) employer, Gori. In light of Ambrosio's testimony at the June 25, 2009 hearing, the Court will reconsider the issue of whether Ambrosio should have been held in civil contempt for failing to comply with the Order.

*Discussion*

The Second Circuit has explained that a finding of civil contempt is appropriate when "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (citing *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).

Ambrosio does not dispute the first two elements under the Second Circuit standard in finding civil contempt.[2]

Although the third element requires that an alleged contemnor make reasonable efforts to comply with the order, in the Second Circuit, a finding of civil contempt is proper only if "obedience is within the power of the party being coerced by the order." *Badgley v. Santacroce*, 800 F.2d 33, 36 (2d Cir. 1986). At the June 25, 2009 hearing, Ambrosio satisfactorily established her inability to comply with the Order. She explained

---

[2] Upon reviewing the audio recording of the June 4, 2009 hearing, it is unclear whether the Court's directive constitutes a clear and unambiguous order for Ambrosio to turn over the keys of the Robert Lane Property to the Debtors. However, the Court need not reach this issue since the Court ultimately finds that the third element of willful non-compliance is lacking. Thus, the Court will not discuss the issue of whether the Order was clear and unambiguous.

4

that she never possessed keys to the Robert Lane Property and had always relied instead on the caretaker for access, who in turn, acted on orders from her employer alone. Thus, compliance with the Order to grant access to the Debtors was beyond Ambrosio's control. As doubts about whether elements for a finding of civil contempt have been met are resolved in favor of the alleged contemnor, *In re Chief Exec. Officers Clubs*, 359 B.R. at 535 (citations omitted), the Court accepts Ambrosio's explanation and finds that she demonstrated a good faith effort to comply with the Order. Although the most appropriate course of action for Ambrosio would have been to promptly notify the Court and the Debtors of her inability to comply, the Court nevertheless finds that the circumstances here do not merit a finding of willful non-compliance and Ambrosio's actions do not meet the requisite elements for a finding of civil contempt.

Since a finding of civil contempt against Ambrosio is unwarranted, compensatory sanctions are inappropriate.

*Conclusion*

Accordingly, for the foregoing reasons, the Contempt Order is hereby VACATED and the Debtors' request for money damages, reasonable costs, and attorney's fees is DENIED.

SO ORDERED.


Dated: New York, New York
       February 4, 2010


                              s/Arthur J. Gonzalez
                              ARTHUR J. GONZALEZ
                              CHIEF UNITED STATES BANKRUPTCY JUDGE